FILED

JUL 2 0 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DANIEL FOSTER,
    3635 San Simeon Circle
    Weston, FL 33331-5044

        Plaintiff,

v.

ALBERTO R. GONZALES, in his official
    capacity as ATTORNEY GENERAL OF THE
    UNITED STATES,
    950 Pennsylvania Avenue, N.W.
    Washington, DC 20530,

        Defendant.

CASE NUMBER 1:06CV01288

JUDGE: John D. Bates

DECK TYPE: Employment Discrimination

DATE STAMP: 07/20/2006

JURY ACTION

## COMPLAINT

Plaintiff Daniel Foster ("Plaintiff") complains against Alberto R. Gonzales in his official capacity as Attorney General of the United States ("Defendant"), and alleges as follows:

### NATURE OF THE ACTION

This action arises as a result of the illegal conduct of the Federal Bureau of Investigation ("FBI") in discriminating against Plaintiff on account of his race (Hispanic) and national origin (Peruvian). The illegal conduct emanates from the racially motivated dismissal of Plaintiff from the service of the FBI.

### JURISDICTION AND VENUE

1.    This action arises under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e et seq.

1

**2.**    This Court has jurisdiction over Defendant and this cause of action pursuant to 42 U.S.C. § 2000e-16(a) and (c).  Mr. Foster filed his charge of discrimination with the FBI on October 5, 2005, more than 180 days prior to the date of this Complaint.  The FBI has not taken final action on his charge of discrimination.

**3.**    Venue in this action properly lies in this district and in this District Court pursuant to 42 U.S.C. §§ 2000e-5(f)(3). The alleged unlawful discrimination practice was committed in whole or in part in this judicial district, the employment records relevant to this unlawful discriminatory practice are maintained and administered in whole or in part in this judicial district, and Mr. Foster worked in part and from time to time in this judicial district.  Moreover, Defendant has its principal office in this judicial district.  Venue is also proper pursuant to 28 U.S.C. § 1391(e).

**PARTIES**

**4.**    Plaintiff Daniel Foster, an individual, resides in Weston, FL and currently is employed as a Loss Prevention Supervisor by J.C. Penney Corporation at its Plantation, FL store.  Mr. Foster was employed as a Special Agent with the FBI from March 1996 until his tentative termination, July 16, 2004, subject to the exercise of his internal appeal rights.

**5.**    Defendant Alberto R. Gonzales is the Attorney General of the United States with principal offices at 950 Pennsylvania Avenue, N.W., Washington, DC.

## FACTUAL BACKGROUND

**6.**    The FBI employed Plaintiff Foster as a Special Agent from March 1996 until his termination.

**7.**    By notices dated January 2, 2001, July 11, 2002, October 23, 2002, and January 23, 2003, the FBI's Office of Professional Responsibility ("OPR") advised Agent Foster it was initiating an investigation into nine specific charges of alleged misconduct, stemming from his assignment with the FBI's San Juan, PR Division. The nine identified charges were: (1) engaging in an inappropriate relationship with a cooperative witness (the "Informant"); (2) securing free drinks from the Informant's club; (3) improperly handling $119,600 cash evidence; (4) misappropriating $20,000; (5) providing false, misleading, or erroneous information on an FBI form, FD-302; (6) falsifying a witness's initials on the same FD-302; (7) failing to document interaction with the Informant; (8) mishandling electronic surveillance tapes; and (9) making false statements during an OPR administrative inquiry into Agent Foster's allegations that his supervisor instructed the destruction of drug evidence, described as "white powder."

**8.**    The FBI required Agent Foster to undergo polygraph examinations with regard to two of those charges, allegations that Agent Foster had misappropriated $20,000 of FBI funds and had forged (falsified) a witness's initials on an FBI form, FD-302. On July 25, 2003, Agent Foster took three separate polygraph examinations at FBI headquarters and, based upon information and

belief, understands he successfully "passed" those three examinations. Both charges were eventually dropped.

9.      By letter dated March 17, 2004, the FBI's OPR advised agent Foster it was proposing to dismiss Agent Foster from the FBI "for the efficiency of the service" following the conclusion of its investigation into the nine allegations of misconduct about which it had previously given him notice. The OPR's March 17, 2004 proposal letter announced OPR was disregarding as "unsubstantiated" allegations (4) and (6) above, misappropriating $20,000 and forging initials but was sustaining each of the remaining seven enumerated charges against Agent Foster. The OPR's proposal letter does not expressly state why OPR elected to drop charges (4) and (6). He was immediately placed on leave without pay.

10.     On June 3, 2004, Plaintiff Foster, through counsel, submitted a written response to OPR, addressing the proposed dismissal and each of the seven OPR-sustained allegations, denying each with a detailed refutation and explanation.

11.     On June 29, 2004, Plaintiff Foster and his counsel made a brief oral presentation to the OPR in support of his written responses to the charges and proposed dismissal.

12.     By letter dated July 7, 2004, OPR advised Plaintiff Foster that, following its review of the investigation and his written and oral responses to the charges, OPR decided that each of the seven remaining enumerated allegations against him had been substantiated ("OPR Decision"). The OPR Decision also

-4-

advised Plaintiff Foster that the OPR was dismissing him from the FBI, effective

upon his receipt of the decisional letter, July 16, 2004, in order to promote the

efficiency of the FBI, but subject to his appeal rights.

**13.**    The OPR Decision explained Plaintiff Foster's internal appeal rights as

follows:

> Should you desire to appeal this action, you may address your
> written response stating the grounds on which you based your
> appeal to the Assistant Director (AD), Administrative Services
> Division (ASD), Room 6012, U.S. Department of Justice,
> Federal Bureau of Investigation, J. Edgar Hoover Building, 935
> Pennsylvania Avenue, Northwest, Washington, D.C. 20535-
> 0001. Any appeal must be filed within ten days following
> notification of the disciplinary action. *The discipline imposed*
> *by this letter is not postponed pending your appeal.*
>
> . . . Upon receipt of an appeal of a suspension of more than
> fourteen calendar days, dismissal, or demotion, the AD, ASD,
> will establish a Disciplinary Review Board (DRB) to review the
> action taken by the OPR.  In exercising appellate authority,
> ASD and a DRB may independently redetermine the factual
> findings and/or the penalty imposed.  Should you wish to
> employ an attorney to assist you in this appeal, you must
> ensure that the enclosed forms on the disclosure of FBI
> information be completed prior to any disclosure of Bureau
> information to the attorney handling your appeal. If you and
> the attorney who will assist you on appeal have earlier
> completed and provided these forms to the Bureau in
> connection with this case, these forms do not need to be
> reaccomplished.    You are  referred  to  the  Director's
> Memorandum to all SACs dated March 5, 1997, for additional
> details pertaining to appeals. (Emphasis added.)

In effect, the OPR Decision gave Plaintiff Foster 10 days to file an appeal with the

Assistant Director, Administrative Services Division, of the FBI, who in turn would

convene the FBI's Disciplinary Review Board ("DRB") to consider that appeal.

**14.**    By letter dated July 24, 2004, Plaintiff Foster submitted to the Assistant Director, Administrative Services Division a *pro se* 12-page appeal of the OPR Decision of dismissal ("Appeal"). It disputed with detailed explanation each of the seven sustained charges against Plaintiff Foster.

**15.**    In his Appeal, Plaintiff Foster repeatedly requested the FBI to give him or allow him to take additional polygraph examinations in order to enable him to exonerate himself, establishing his innocence, with respect to all seven charges. As justification, he cited to the fact that his asserted lack of credibility was the pivotal factor upon which the OPR Decision purportedly relied to substantiate the charges against him.

**16.**    By letter dated August 5, 2005, received August 13, 2005, the Acting Director of the Administrative Services Division informed Plaintiff Foster that the DRB had denied his Appeal, thereby upholding his dismissal ("DRB Decision").

**17.**    Singling out four of the substantiated charges for analysis and discussion, the DRB Decision characterizes Plaintiff Foster's conduct as a dereliction of investigative responsibilities and as evidencing a serious lack of integrity. It labels Plaintiff Foster's rebuttal evidence as contrary to "overwhelming corroborative testimony of a number of witnesses." Conceding the four analyzed charges, standing alone, would have warranted "only" a suspension, the DRB Decision states the remaining charge, lying under oath about his supervisor's role in ordering destruction of drug evidence, led the DRB to conclude that Plaintiff Foster had constructed a series of "progressively disingenuous scenarios" to

extricate himself from the initial lie and thus that his response was "utterly lacking in credibility." According to the DRB Decision, sustaining this latter charge, lying under oath, by itself necessitated dismissing Plaintiff Foster from the services for the efficiency of the FBI.

18. The DRB Decision makes no mention of Agent Foster's repeated requests in his Appeal for polygraph examinations to exonerate himself from the seven charges despite the DRB Decision's express attack upon his credibility, resting affirmation of dismissal virtually entirely upon the DRB's determination that Plaintiff Foster's lack of credibility rendered his refutations of the charges non-persuasive and unavailing.

19. On September 12, 2005, as supplement on September 13, 2005, Plaintiff Foster filed with the FBI's Acting Assistant Director, Administrative Services Division a formal Petition for Reconsideration and to Reopen for the Receipt of New Evidence ("Petition for Reconsideration"). The proffered new evidence attached to Plaintiff Foster's Petition for Reconsideration consisted of a report from former FBI Special Agent Kendall Shull, the former Chief and Program Manager of the FBI's Polygraph Unit. The report described the results of two voluntary polygraph examinations Mr. Shull conducted of Plaintiff Foster on July 19, 2005 and the protocol used in their execution.

20. Mr. Shull in his report attached to the Petition for Reconsideration unequivocally concludes that, in his professional opinion, the polygraph examinations he conducted establish that Plaintiff Foster was telling the truth

when he stated he had not accused or even implied that his supervisor had ordered the destruction of the white power, the drug evidence, found in the possession of the Informant and when he stated he had paid for all of the drinks served at the Informant's club.

21.    Plaintiff Foster's Petition for Reconsideration requested the FBI to reopen the proceeding for the acceptance and consideration of this new evidence, Mr. Shull's report of the results of the polygraph examinations of Plaintiff. The Petition explained how the new evidence fully exonerated Plaintiff of the most serious charge levied against him, the charge upon which the FBI's DRB Decision asserts the DRB rested its decision to dismiss Plaintiff.

22.    By letter dated September 23, 2005, the FBI's Acting Assistant Director, Administrative Services Division advised Plaintiff Foster that she was rejecting and thus denying his Petition for Reconsideration allegedly because the FBI considers the DRB Decision as "the FBI's final action on this matter."

23.    On August 18, 2005, Plaintiff Foster contacted the FBI's EEO office to complain about the role of discrimination in the FBI's actions dismissing him from the service of the FBI, citing discrimination based upon his race (Hispanic) and national origin (Peruvian) as the factor.

24.    On or about October 5, 2005, Plaintiff Foster filed his formal complaint with the FBI alleging discrimination based upon race and national origin. The FBI acknowledged the complaint by letter dated October 13, 2005.

The FBI initiated the required investigation into Plaintiff Foster's complaint of discrimination and agreed to complete it by May 18, 2006. It has not done so.

25.    Based upon Plaintiff's information and belief, during all times relevant to this Complaint, no Hispanic was a member of either the OPR or the DRB that investigated the charges against Plaintiff, evaluated his response to those charges, ignored his requests for polygraph examinations, and considered and denied his Appeal and his Petition for Reconsideration and To Reopen.

26.    Based upon Plaintiff's information and belief, the FBI has not terminated non-Hispanic Special Agents for allegedly lying under oath during the course of an internal FBI investigation.

27.    Based upon Plaintiff's information and belief, the FBI has not terminated non-Hispanic Special Agents who the FBI determined were engaged in misconduct comparable to what it alleges in the DRB and OPR Decisions that Plaintiff had committed and warranted his dismissal from the FBI, and the FBI has given these non-Hispanics milder discipline ranging from oral reprimands up to 60-day suspensions.

28.    As a direct result of his termination from the FBI, Plaintiff Foster was unable to find employment in law enforcement. He finally secured employment as a private security guard, starting July 27, 2005, at a salary significantly below what he had been earning as a Special Agent for the FBI at the date of his termination.

**29.**    His termination of employment from the FBI placed extreme economic

hardship on Plaintiff.  He lost the health insurance coverage for himself and his

family, and he has had to exhaust his savings, invade his retirement fund, and

sell his home in order to pay bills and has had to move into a small rental

apartment.

## STATEMENT OF CLAIMS

### First Claim For Relief
### (Disparate Treatment on the Basis of Race
### and National Origin -- 42 U.S.C. § 2000e-2)

**30.**    Plaintiff realleges and incorporates by reference the allegations

contained in Paragraphs 1 through 29 as Paragraph 30.

**31.**    Plaintiff is an Hispanic male, born in Peru.

**32.**    Defendant has intentionally discriminated against Plaintiff, subjecting

him to disparate treatment on the basis of his race and national origin, in

violation of 42 U.S.C. § 2000e-2(a)(1), in that Defendant's FBI:

> **(a)**    terminated Plaintiff Foster from his position as a Special Agent
>
> because of his race and national origin;
>
> **(b)**    terminated Plaintiff Foster from his position as a Special Agent
>
> because of his race and national origin without giving him an
>
> opportunity to undergo polygraph examinations to exonerate
>
> himself of the very charges on which the FBI relied to terminate
>
> him following its conclusion that those charges had been
>
> substantiated because of Plaintiff's lack of credibility;

-10-

**(c)**    terminated Plaintiff Foster from his position as a Special Agent because of his race and national origin without considering tendered evidence of polygraph examinations that, if considered, would have conclusively disproven the charges upon which the FBI's decision to terminate was predicated; and

**(d)**    terminated Plaintiff Foster from his position as a Special Agent because of his race and national origin while non-Hispanic Special Agents who committed comparable offenses (to those of which Plaintiff was charged) received lighter forms of discipline.

34.    As a direct and proximate result of Defendant's wrongful and willful dismissal and termination of Plaintiff from the FBI, Plaintiff has suffered economic losses, including loss of income and other employment benefits, which losses are continuing.

35.    As a direct and proximate result of Defendant's wrongful and willful dismissal and termination of Plaintiff from the FBI, Plaintiff has experienced and is experiencing mental anguish, emotional distress, personal humiliation, pain, and suffering, and damage to his personal and professional reputation.

**REQUESTED RELIEF**

36.    Plaintiff respectfully requests the Court to award costs, including expert witness fees and reasonable attorneys' fees, to Plaintiff pursuant to 42 U.S.C. §§ 2000e *et seq.*, together with a declaration of relief as to the First Claim For Relief as set forth below:

-11-

(a)    Plaintiff demands judgment against Defendant as follows:

    (1)    for economic loss suffered, compensatory damages in an amount to be determined in accordance with the proof at trial, plus interest at the legal rate until paid, pursuant to 42 U.S.C. §§ 1981a(a) and (b);

    (2)    for physical and emotional distress, pain and suffering, mental anguish, damage to personal and professional reputation, and loss of enjoyment of life in the form of non-economic damage, compensatory damages in the amount of $300,000 in accordance with the proof at trial, plus interest at the legal rate until paid, pursuant to 42 U.S.C. §§ 1981a(a) and (b); and

    (3)    for lost wages and other benefits and entitlements, including back pay, with interest, associated with the wrongful termination of Plaintiff Foster, pecuniary damages in an amount to be determined at trial, pursuant to 42 U.S.C. § 2000e-5(g) and in accordance with 42 U.S.C. §§ 1981a(a) and (b)(2);

(b)    Plaintiff demands reinstatement in the FBI at the same GS grade and step he held at the time of his dismissal, together with all usual and normal sequential periodic step increases thereafter until the date of reinstatement;

-12-

(c)    Plaintiff demands reinstatement in the FBI in the same position, at the same duty station, and with the same seniority and general duties he held and had been assigned at the date of his dismissal;

(d)    Plaintiff demands all costs and expenses of bringing this action, including recovery of attorneys' fees; and

(e)    Plaintiff demands such other relief as the Court deems just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial of all issues properly triable to a jury.

Respectfully submitted,

**Daniel Foster**

Dated and Filed:                    by:    Kim D. Mann (Bar # 81471)
July 17, 2006                              SCOPELITIS, GARVIN, LIGHT & HANSON, P.C.
                                           1850 M Street, N.W., Suite 280
                                           Washington, DC 20036-5804
                                           (202) 783-9222
                                           (202) 783-9230 (fax)

**Attorney for Plaintiff**

-13-