IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL FOSTER,<br><br>    Plaintiff,<br><br>v.<br><br>ALBERTO R. GONZALES, in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES,<br><br>    Defendant. | Civil Action No.:<br>06-1288 (JDB) |

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Daniel Foster submits his Memorandum in Opposition to Defendant's Motion to Dismiss ("Motion"). Defendant's Motion, filed November 6, 2006 pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedures ("Fed. R. Civ. P."), contends the alleged failure of Plaintiff, a federal employee, to exhaust his administrative remedies prior to filing his judicial complaint requires dismissal of the Complaint ("Compl.") as a matter of law.

### BACKGROUND

I.  **Summary of Facts**

On July 18, 2006, Plaintiff filed his Complaint against Alberto R. Gonzales, in his official capacity as the Attorney General of the United States, alleging discrimination on the basis of Plaintiff's race (Hispanic) and national origin (Peruvian). The illegal conduct the Complaint alleges is the racially and national-

origin motivated dismissal of Plaintiff from the service of the Federal Bureau of Investigation ("FBI").

In January 2001, the FBI charged Mr. Foster with nine separate incidents of wrong-doing, including the serious allegations of misappropriating $20,000 of FBI funds and falsifying a witness's initials on a federal form. After Mr. Foster successfully passed an FBI-mandated polygraph examination on July 25, 2003 limited to addressing these two serious charges, the FBI dropped both charges. Compl. ¶¶ 8, 9. Relying upon the remaining charges, the FBI, on July 7, 2004, notified Mr. Foster it was dismissing him from the FBI, effective July 16, 2004. Compl. ¶ 12. The FBI's letter notifying him of dismissal explained Mr. Foster's post-notice rights. The explanation was limited to describing Mr. Foster's right to file an appeal with the FBI. No mention was made of his civil rights. Compl. ¶ 13; *see* attached Affidavit of Daniel Foster ("Foster Aff."), ¶8.

Mr. Foster timely exercised his right to appeal the FBI decision to dismiss. His *pro se* appeal urged the FBI to submit him to polygraph examinations with respect to the remaining charges that led to the dismissal, charges that were never the subject of the FBI-mandated polygraph examinations. Compl. ¶ 15. By letter received August 13, 2005, the FBI denied Mr. Foster's appeal but without mentioning his request for further polygraph examination.

On September 12, 2005, Mr. Foster filed a formal petition for reconsideration and to reopen the dismissal proceeding for the receipt of new evidence, tendered with his petition. The new evidence Mr. Foster presented to the FBI consisted of recent polygraph examinations of Mr. Foster by and an explanatory report from the FBI's former Chief and Program Manager of the FBI

Polygraph Unit. The tendered polygraph report exonerated Mr. Foster of the remaining two serious charges, both involving questions about his credibility. Compl. ¶¶ 19, 20. On September 23, 2005, the FBI rejected and thus denied Mr. Foster's petition for reconsideration and request to reopen, again without mentioning or commenting upon the proffered polygraph examinations and report exonerating Mr. Foster.

On August 18, 2005, Plaintiff Foster contacted the FBI's EEO office to complain about the role of discrimination in the FBI's dismissal, citing discrimination based upon his race and national origin as factors. Mr. Foster filed his formal EEO complaint with the FBI on October 5, 2005, alleging discrimination based upon race and national origin. Compl. ¶ 32. When the FBI failed to take any action to address Mr. Foster's charges of discrimination, Mr. Foster filed his Complaint with this Court on July 18, 2006.

## II. Summary of Position of the Parties Before the Court

In lieu of filing an answer to the Complaint, Defendant filed a Motion to Dismiss under Rule 12(b)(6) of the Fed. R. Civ. P. and submitted a Memorandum of Points and Authorities in Support of Motion to Dismiss ("Def. Mem."). Defendant's Rule 12(b)(6) Motion alleges Mr. Foster failed to exhaust his administrative remedies prior to filing his Complaint, specifically failing to contact an EEO counselor within 45 days of the date of his termination, claimed to be July 16, 2004. Def. Mem. 4-5.

Plaintiff disagrees. The Motion is without merit and should be denied on alternative grounds. Under the doctrine of equitable tolling applicable here, the 45-day period within which Mr. Foster was required to contact the EEO counselor

did not start until August 13, 2005 or shortly thereafter, the date when Mr. Foster received the FBI letter denying his appeal and was informed by counsel of his obligation to contact an EEO counselor. But even if Mr. Foster is not entitled to the benefit of equitable tolling here, the final decision of the FBI terminating him was its decision received August 13, 2005, denying Mr. Foster's appeal. Mr. Foster contacted the EEO counselor on August 18, 2005, well within 45 days of August 13, 2005.

**ARGUMENT**

I. **The 45-Day Administrative Deadline Does Not Bar Plaintiff's Action.**

   A. **The EEOC's Criteria For Tolling Apply Here.**

Defendant's allegations regarding the failure to exhaust administrative remedies is based upon the alleged failure of Plaintiff to comply with the provisions of the regulations promulgated by the Equal Employment Opportunity Commission ("EEOC"), codified at 29 CFR Part 1614. Specifically, Defendant cites and relies upon the provisions of 26 CFR § 1614.105(a)(1)(2006), requiring a federal employee contending he or she has been discriminated against based upon race and national origin to:

> initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

This so-called deadline is, however, not absolute. As Defendant acknowledges (Def. Mem. 5), the 45-day time frame fixed in the EEOC regulations for contacting the EEO counselor is subject to waiver, estoppel, and equitable tolling because of its similarity to statutes of limitations. *See Jarmon v. Powell*, 208 F.Supp.2d 21, 24 (D.D.C. 2002) (Bates, J.) ("*Jarmon*"). Equitable tolling excuses the plaintiff's

non-compliance with the 45-day limitations period if the plaintiff lacks "vital information bearing on the existence of his claim" despite his exercise of due diligence. *Id., quoting Currier v. Radio Free Europe/Radio Liberty*, 159 F.3d 1363, 1367 (D.C. Cir. 1998).[1]

This Court in *Jarmon* recognized the potential equitable tolling effect of the EEOC's own companion regulation, found at 29 CFR § 1614.105(a)(2), upon the EEOC's administrative 45-day time limit:

> The agency . . . shall extend the 45-day time limit . . . when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency. . . .

*Id.* at n.4, *quoting* 29 CFR § 1614.105(a)(2). *Accord, Harris v. Attorney General of the United States*, 400 F.Supp.3d 24 (D.D.C. 2005) (Bates, J.) ("*Harris*"). The Court in *Jarmon* ruled the plaintiff there was not entitled to the equitable relief of 29 CFR § 1614.105(a)(2) from the administrative deadline imposed by 29 CFR § 1614.105(a)(1) because of the unique facts and circumstances surrounding that plaintiff's excuses for not observing the 45-day contact requirement.

**B.    Mr. Foster Satisfies First Test For Tolling.**

The EEOC's 29 CFR § 1614.105(a)(2) establishes four "either-or" tests for equitable tolling. Satisfy any one of the four alternatives and the federal agency (or the EEOC if the employee is before that Commission) must extend the 45-day

---

[1] *Currier*, however, was not interpreting the 45-day limit period at issue here or the administrative equitable tolling criteria of the EEOC, also at issue. As discussed *infra*, due diligence is not a factor in the applicable test set forth in the tolling regulations of the EEOC upon which Plaintiff relies.

limit.[2] Here, Mr. Foster clearly satisfies the first of the four administrative tests: he was not notified of the 45-day limit or otherwise aware of it. Foster Aff. ¶¶ 3-9.[3] As Mr. Foster explains, he had no training in, exposure to, or experience with EEO complaints or the EEO legal process, had not seen posted at his worksite any notice of a 45-day time limit for contacting EEO counselors, and had been acting *pro se* during the critical mid-July 2004 time period when he received initial notice of his termination.[4] Foster Aff. ¶¶ 4-7. None of the FBI's communications addressing his dismissal advised him of his EEO rights. Foster Aff. ¶ 8. He learned of the 45-day deadline for the first time from his new legal counsel shortly after receipt of the August 13, 2005 letter from the FBI denying his *pro se* appeal. Foster Aff. ¶ 3.

While the EEOC has not opined on whether Mr. Foster's rationale for not observing the 45-day deadline -- assuming July 16, 2004 is the trigger date -- satisfies the principles set forth in its equitable tolling regulation, the EEOC case law construing and applying the criteria of § 1614.105(a)(2) affords ample guidance. In examining the criteria of the first test, notice or otherwise known, the EEOC, in *Gilmer v. Potter, Postmaster General*, EEOC Doc. 01A53349, 2005 WL

---

[2] In this case, neither the FBI nor the EEOC extended the administrative 45-day deadline for Mr. Foster or even examined its applicability to Mr. Foster's circumstances. Mr. Foster filed his Complaint directly with Court once the FBI failed to address his administrative complaint.

[3] Arguably, he also satisfies the third test, that despite due diligence, circumstances beyond his control prevented him from timely contacting his EEO counselor. Those circumstances are the excusable ignorance or lack of knowledge he, as a layman, possessed about the EEO laws and the 45-day time frame.

[4] The admonition of Justice Stevens in his recent dissenting opinion in *Woodford v. Ngo*, 126 S.Ct. 2378 (Jan. 22, 2006), to protect laymen from legal procedural technicalities, including so-called "deadlines," should be heeded here: ". . . as the American Bar Association points out, we should be particularly hesitant to impose 'judicially-created procedural technicalities . . . in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.'" [Citation and footnote omitted.] 126 S.Ct. at 2399.

1903491 (E.E.O.C.), applies what appears to be an actual or constructive knowledge standard, asking whether the employee had actual or constructive notice from the agency of the 45-day deadline:

> Although the poster further provides that "postal employees may seek relief through the Equal Employment Opportunity (EEO) complaint process. . . .", Poster 21 fails to mention any time limits or provide any contact information for the EEO Office. As such, we find that this poster fails to provide sufficient notice such that we could infer that complainant was aware of the relevant time limits.
>
> The agency argues that Poster 72, titled "Equal Employment Opportunity Is the Law" was also posted in the facility and provided the necessary time limits, however, there is nothing in the record to support this. The agency relies on a statement from CSM that an EEO notice was posted on the permanent bulletin board as well as in the breakroom. CSM further states that the notice informs employees of the 45 day time limit and how to contact the EEO Office. However, CSM failed to specify exactly which poster he was referring to and the agency has failed to include a copy of that poster in the record evidence. Even if we were to assume that the requisite notice of the time limits and contact information was properly posted, the fact that complainant may have erroneously relied on Poster 21 to assert her EEO rights is not unreasonable given the information provided on Poster 21 and its failure to inform employees of their need to contact an EEO Counselor within 45 days. This confusion warrants tolling of the time limits in this case.

*Id.* at *2. *Accord, Shannon v. Potter, Postmaster General*, EEOC Doc. 01A35803, 2005 WL 2254311 (E.E.O.C.):

> We find that there is not sufficient evidence in the record showing complainant had actual or constructive notice of the time limit for contacting an EEO Counselor. The agency failed to meet its burden when it failed to provide a copy of the EEO poster on display at complainant's workstation or the EEO material that was presented during the Employee Orientation. We are unable to determine whether the EEO Poster displayed at the workplace or the EEO material presented during the Employee Orientation contained the time limit for contacting an EEO Counselor.

*Id.* at *2.

The burden of establishing the employee had actual or constructive knowledge of the time limit rests squarely upon the agency. *Paulson v. Barreto, Administrator, SBA*, EEOC Doc. 01A55696, 2006 WL 721971 (E.E.O.C.) at *3;

*Williams v. Potter, Postmaster General*, EEOC Doc. 01A61252, 2006 WL 2096158 (E.E.O.C.) at *3; *Wyatt v. Potter, Postmaster General*, EEOC Doc. 01A63145, 2006 WL 2647573 (E.E.O.C.) at *2. The courts, too, have recognized the defendant agency carries this burden of proof. *See Silver v. Leavitt*, 2006 WL 626928 at *8 (D.D.C. Mar. 13, 2006) (unpublished decision), and cases cited therein.

Here, the FBI has not met its burden. In its Motion, Defendant proffers no evidence or even an explanation as to how or why it claims Mr. Foster knew or should have imputed knowledge of the 45-day time limit on or before July 16, 2004, the date it claims the administrative clock started running on Mr. Foster's obligation to contact the FBI's EEO counselor.

Central to any question about Mr. Foster's knowledge is the posting, if any, of the 45-day deadline in his pertinent work area. The EEOC's regulations at 29 CFR § 1614.105(b)(7) require all federal agencies, which presumably includes the FBI, to "post at all times . . . a notice of the time limits and necessity of contacting a [EEO] Counselor before filing a complaint. . . ." An agency posting as required may, but not necessarily will, be sufficient to impute knowledge of the 45-day deadline to the employee. *See Gilmer, supra* at *2; *Shannon, supra* at *2. Conversely, the failure of the agency to post as required may, but not necessarily must, lead to the conclusion the agency has not met its burden of proving the employee received constructive notice of the time limit. *See Wyatt supra* at *2; *Paulson, supra* at *3; and *Baldonado v. Potter, Postmaster General*, EEOC Doc. 01A54970, 2005 WL 3452086 (E.E.O.C.) at *2.

Defendant does not allege much less prove in his Motion that the FBI had posted the requisite EEO deadline information in Mr. Foster's work area in Miami, contemporaneously with his receipt on July 16, 2004 of the letter notifying him of his dismissal from the FBI. And Mr. Foster expressly denies ever seeing any such posting in either the Miami, San Juan, or Chicago office areas of the FBI where he worked. Foster Aff. ¶¶ 5,6.

This Court, although not reviewing the FBI's or the EEOC's own action extending or refusing to extend the 45-day time limit, has been requested, through Plaintiff's Opposition, directly to toll or extend that time limit, applying the equitable principles embodied in the EEOC's regulations, 29 CFR § 1614.105(a)(2). This Court recognized in *Jarmon* and applied in *Harris* these same administrative principles and the criteria of 29 CFR § 1614.102(a)(2) when asked to dismiss a judicial complaint for failing to exhaust administrative remedies. *Jarmon, supra* at n.4; *Harris, supra* at 27.

### C.  EEOC Interpretation of 29 CFR § 1614.105(a)(2) Entitled To Substantial Deference.

The EEOC cases analyzed above spell out how the EEOC interprets and applies its equitable tolling regulation to facts similar to those surrounding Mr. Foster's failure to contact the EEO counselor within 45 days of July 16, 2004. This Court must give substantial deference to the EEO's interpretation of its own regulations it is authorized to promulgate. *See NTEU v. Chertoff,* 452 F.2d 839, 859 (D.C. Cir. 2006); *Venetian Casino Resort v. EEOC,* ___ F.Supp.3d ___, 2006 WL 2806568 (D.D.C. Sept. 29, 2006) at *6. Deference to EEOC interpretation is particularly warranted here because Defendant's Motion in effect requires the

Court to apply the EEOC's own regulatory administrative deadline, a deadline to which the EEOC has crafted its own set of administrative regulatory exceptions, and because Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(b), authorizes the EEOC to issue these very rules and regulations. *See* 57 *Fed. Reg.* 12634 (April 10, 1992), 1992 WL 70811 (F.R.)

### D. Defendant's Proffered Criteria For Tolling Inapplicable.

While Defendant acknowledges equitable tolling as a generally applicable concept, he does not discuss or make reference in his Motion to the effect of equitable tolling upon *Jarmon*, *Harris*, the federal EEOC regulation adopting the administrative criteria for equitable tolling, or any cases applying that regulation. Instead, Defendant urges this Court to hold Plaintiff to different criteria, specifically to proof that the FBI engaged in "affirmative misconduct or misled him about the running of the statutory period" or that Plaintiff was "prevented from contacting an EEO counselor." Def. Mem. 6. While these may be examples of conduct warranting equitable tolling under any set of criteria, they do not exhaust the possibilities, define the doctrine, or provide the outer contours of the criteria the EEOC adopted in 29 CFR § 1614.105(a)(2) and this Court must apply here.

Defendant argues, without elaboration or supporting evidence, that "Plaintiff's failure to contact the EEO office is due solely to his failure to exercise due diligence." Def. Mem. 6. Defendant continues, claiming "Plaintiff . . . also cannot show that he did not know or should have reasonably known that the discriminatory personnel action occurred on July 16, 2004." *Id.* Defendant's arguments are irrelevant to the issue of timelines. "Due diligence" is not part of

the first applicable test of 29 CFR § 1614.105(a)(2), the test Plaintiff requests the Court to apply to his situation, and the issue here is not whether the trigger date is July 16, 2004 or August 13, 2005, but, assuming July 16, 2004 is the trigger date, whether Mr. Foster knew or had constructive knowledge of the 45-day time limit on or about July 16, 2004.  As his evidence shows, he did not, and Defendant presents nothing to contradict his evidence.

II.     **The Controlling Discriminatory Action Occurred on August 13, 2005.**

Even if the Court rules the equitable tolling principles of 29 CFR § 1614.105(a)(2) do not entitle Mr. Foster to an extension of the 45-day deadline, he nevertheless timely contacted his EEO counselor.  He contacted his EEO counselor within 45 days following his receipt of the August 13, 2005 FBI letter denying his appeal of the July 7, 2004 decision notifying him of his termination. Plaintiff contends the actionable discriminatory conduct was the August 13, 2005 letter; the July 7, 2004 letter was tantamount to a non-final preliminary or initial agency decision to terminate, subject to subsequent modification or reversal.

A.     **Exhaustion Doctrine Is Two-Edged Sword For Defendant.**

Ironically, Defendant in his Motion takes Plaintiff to task for not exhausting his administrative remedies before filing his EEO Complaint with this Court, but at the same time argues Mr. Foster should have initiated his EEO process at the agency within 45 days of July 16, 2004 without waiting for the FBI to act upon his timely filed internal appeal, an appeal filed pursuant to the FBI's appellate process and in accordance with the FBI's express instructions.  Favorable treatment of his appeal would have mooted any need for Mr. Foster to initiate the EEO process or

to file this Complaint. Defendant can not in good faith embrace the exhaustion doctrine to support dismissal of the judicial Complaint while, at the same time, rejecting its applicability when Plaintiff seeks to rely upon it to justify delaying contacting his EEO counselor.

The position Defendant advocates in rejecting the concept of exhausting administrative remedies so as to avoid the necessity of pursuing the EEO complaint can not be reconciled with the Supreme Court's admonition in *Woodford v. Ngo, supra*, to exhaust administrative remedies:

> . . . administrative law creates an incentive for those parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, "which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Pozo*, 286 F.3d, at 1024 (emphasis in original). This Court has described the doctrine as follows: "[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice.*" *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952) (emphasis added). See also *Sims v. Apfel*, 530 U.S. 103, 108, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); *2386 *id.*, at 112, 120 S.Ct. 2080 (O'Conner, J., concurring in part and concurring in judgment) ("On this underlying principle of administrative law, the Court is unanimous"); *id.*, at 114-115, 120 S.Ct. 2080 (BREYER, J., dissenting); *Unemployment Compensation Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155, 67 S.Ct. 245, 91 L.Ed. 136 (1946); *Hormel v. Helvering*, 312 U.S. 552, 556-557, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); 2K. Davis & R. Pierce, Administrative Law Treatise § 15:8, pp. 341-344 (3d ed. 1994).

126 S.Ct. 2378.

Defendant contends the FBI's decision-notification letter of July 7, 2004, received July 16, 2004, was the final, effective, unequivocal, unconditional personnel action triggering Mr. Foster's obligation to initiate the EEO process by contacting his EEO counselor. Def. Mem. 7-9. At the same time, Defendant

-12-

rejects Plaintiff's position that the subsequent FBI letter of August 13, 2005, denying Mr. Foster appeal, was that triggering action. *Id.* Plaintiff disagrees with Defendant's assessment.

Beyond cavil, the FBI has in place and made available to Mr. Foster its carefully crafted comprehensive appeals structure and protocol for reviewing initial decisions to impose discipline, including dismissals from the Agency. This appeals process includes the right of the employee to challenge and seek to overturn an initial decision to dismiss. The FBI explains these generic rights and how they may be exercised in its letter of July 7, 2004 to Mr. Foster:

### **APPEAL RIGHTS**

> Should you desire to appeal this action, you may address your written response stating the grounds on which you base your appeal to the Assistant Director (AD), Administrative Services Division (ASD), Room 6012, U.S. Department of Justice, Federal Bureau of Investigation, J. Edgar Hoover building, 935 Pennsylvania Avenue, Northwest, Washington, D.C. 20535-0001. Any appeal must be filed within ten calendar days following notification of the disciplinary action. *The discipline imposed by this letter is **not** postponed pending your appeal.*
>
> Upon receipt of an appeal of a suspension of fourteen calendar days or less or a probation action, the AD or Deputy AD, ASD, will personally review and decide the appeal. Upon receipt of an appeal of a suspension more than fourteen calendar days, dismissal, or demotion, the AD, ASD, will establish a Disciplinary Review Board (DRB) to review the taken action by the OPR. In exercising appellate authority, ASD and a DRB may independently redetermine the factual findings and/or the penalty imposed. Should you wish to employ an attorney to assist you in this appeal, you must ensure that the enclosed forms on the disclosure of FBI information be completed prior to any disclosure of Bureau information to the attorney handling your appeal. If you and the attorney who will assist you on appeal have earlier completed and provided these forms to the Bureau in connection with this case, these forms do not need to be reaccomplished. You are referred to the Director's Memorandum to

>all SACs dated March 5, 1997, for additional details pertaining to appeals. [Emphasis in the original.]

Foster Aff., Attachment at p.16.

Although the July 7, 2004 letter from the FBI emphasizes that the discipline imposed is not postponed during the pendency of the appeal, it also emphasizes the non-finality of that discipline: "In exercising appellate authority, ASD and a DRB [Disciplinary Review Board] may independently redetermine the factual findings and/or the penalty imposed." *Id.* Thus, the FBI expressly invites an appeal from Mr. Foster and provides for an independent review of the facts and penalty initially imposed. Here, Mr. Foster's termination became effective upon receipt of the letter of July 7, 2004, but that termination was potentially only temporary and did not become "final" until he had exhausted the FBI's administrative appeals procedures.

### B. Seventh Court Decisions Not Dispositive.

Defendant attempts to counter Plaintiff's rationale for relying upon his obligation to exhaust his administrative remedies by citing to decisions from other district courts in other circuits, primarily the Seventh Circuit. Def. Mem. 7-10. Those cited cases address the effect of the employee's resort to a contractual (collective bargaining agreement-based) grievance process involving a third-party arbitrator. That process is not at all comparable to the agency's own internal appellate process, such as the FBI's, in which the agency's own internal review panel affords independent reassessment of the facts and the penalty.

Whatever the law in the Seventh Circuit, it is not law in this Circuit, at least none that Defendant cites. Defendant fails to cite any DC Circuit or District Court decision that has adopted the position of the Seventh Circuit on the ineffectiveness of resort to the administrative appellate or grievance process to delay initiating the EEO process.

While Plaintiff has not uncovered any DC Circuit or District Court cases directly on point, the Court's decision in *Pinkney v. District of Columbia*, 439 F.Supp. 519 (D.D.C. 1977), offers relevant guidance. In *Pinkney*, the Court examined a District of Columbia law requiring an employee of Federal City College to furnish written notice to the Major within six months of experiencing an incident of harm as a condition precedent to maintaining a suit against the District for liquidated damages. *Id.* at 525. The plaintiff had waited 15 months after his dismissal to provide the requisite formal written notice, but had in the interim and within six months appealed his dismissal to the DC Board of Higher Education. *Id.* In rejecting the defendant's argument for dismissal of the court action based upon untimeliness of the notice, the *Pinkeny* Court stated:

> Plaintiff opposes this argument, rightly in the Court's view, on the grounds that the notice requirement did not arise until after the ensuing administrative proceedings had fully run their course and that thereafter plaintiff furnished the District with prompt notice of his claims. In the Court's judgment, a proper regard for the purposes served by § 309 compels the conclusion that plaintiff properly waited until after the outcome of his administrative appeal before providing formal notice of is claims.

\* \* \* \*

> Where exhaustion is a necessary condition to bringing suit, plaintiff is under a duty to provide appropriate government administrators with the first opportunity to review and pass on his claim. Not until administrative processing is finally conducted is the matter ripe for judicial intervention. And thus not until then has the matter accrued for the purpose of triggering the duty to furnish timely notice of prospective litigation.
>
> The suggestion is made that tolling the notice requirement until after administrative remedies are exhausted somehow offends the design of § 309 to put the government on the early alert with regard to litigation likely to take place. In fact, just the opposite is true. Where a claimant is required to pursue his administrative remedies under the exhaustion doctrine, he necessarily will alert the government to the existence of a potentially litigable dispute. Furthermore, he typically will provide government officials with a detailed explanation of his grievance inasmuch as administrative processing requires full disclosure of the facts and circumstances underlying the claim, and not, as is the case with § 309, bare notice of it. In this way prompt resort to the administrative process in no way offends the claims of § 309. Far from doing that, pursuit of administrative remedies generously serves the purposes behind § 309.

*Id.*

So, too, Mr. Foster's employer, the FBI, afforded him an avenue to seek redress of his dismissal through an administrative appeal process, and, without doubt, had he chosen to go directly to court to challenge on its merits (not on EEO grounds) the decision to dismiss as improvidently issued, Defendant would have argued for dismissal of his complaint on grounds he had failed to exhaust his administrative remedies.[5/] This omission proved fatal to the lawsuit of federal

---

[5/] Plaintiff understands he has no statutory basis for a direct attack upon the merits of the decision of the FBI to dismiss as a prohibitive personnel practice.

employees seeking a preliminary injunction to overturn agency suspensions in *Wallace v. Lynn*, 507 F.2d 1186 (D.C. Cir. 1974) (employees failed to take advantage of internal grievance process at the U.S. Department of Housing and Urban Development before proceeding to court). *Accord, Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 966-68 (D.C. Cir. 1990).

### C. Exhaustion Doctrine Should Apply to Underlying Agency Conduct Before Pursuing Title VII Claim.

There is no meaningful distinction in terms of the timing of judicial review between an employee claiming the federal agency's conduct violates Title VII of the Civil Rights Act and one claiming the same agency conduct is factually and legally unsustainable without regard to its discriminatory basis or effect. The law requires the federal employee in both instances to exhaust his/her administrative remedies before proceeding to challenge the agency conduct in court -- the agency must be given every opportunity to address the claims and correct its handling of the actions that are the subject of the claims.

Likewise, the same federal employee should be required or at least permitted to exhaust the federal agency's administrative remedies in an effort to convince the agency to reverse the underlying baseless agency action or conduct the employee asserts is racially motivated, <u>when that agency act or conduct is not final</u>, before being required to initiate the administrative EEO process to attack the agency's motive as violative of Title VII. Here, the parties treated the decision of July 7, 2004 as effective but not final. This Court should, too.

## CONCLUSION

For the foregoing reasons, Defendant's Motion To Dismiss must be denied either because Plaintiff lacked notice and knowledge of the 45-day deadline on or about July 16, 2004 or because he contacted his EEO counselor within 45 days of August 13, 2005, the date of receipt of the final agency decision to dismiss.

Respectfully submitted,

_____/s/_____

| | |
|---|---|
| Dated and Filed:<br>December 4, 2006 | KIM D. MANN, D.C. Bar # 81471<br>SCOPELITIS, GARVIN, LIGHT & HANSON, P.C.<br>1850 M Street, N.W., Suite 280<br>Washington, DC 20036-5804<br>(202) 783-9222<br>(202) 783-9230 (fax)<br><br>**Attorney for Plaintiff**<br>**Daniel Foster** |