UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DANIEL FOSTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-1288 (JDB) |
| ) | ECF |
| ALBERTO GONZALES, ) | |
| Attorney General of the United States, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Alberto Gonzales, Attorney General of the United States and head of the United States Department of Justice, by and through his undersigned counsel, hereby submits this reply in support of Defendant's Motion to Dismiss.

### INTRODUCTION

Plaintiff admits in his opposition that he failed to contact an EEO counselor to assert a discrimination claim within the 45-day period from the effective date of his termination. See Pl.'s Opp. at 3. Plaintiff seeks to avoid the dire consequences of his delay in two equally unavailing ways. First, plaintiff argues as a matter of law that his internal appeal of the termination decision extended or tolled the time for Plaintiff to bring his claim to an EEO counselor. Second, plaintiff contends that, as a matter of fact, the 45-day period should be tolled because, based solely on plaintiff's faulty recollection, the FBI supposedly failed to provide him notice of the time requirements.

As to the former, although the D.C. Circuit has yet not squarely addressed the exact issue, there is unanimous authority from this Court and other federal Circuits which is persuasive because it is both logical and faithful to the exhaustion requirements of Title VII. Moreover, plaintiff's concept of tolling flies in the face of Supreme Court precedent. Plaintiff fails to address most of these cases entirely and utterly fails to distinguish the others in any meaningful way. With regard to the latter, the FBI has a record of repeatedly training its employees and posting information in each office where Plaintiff was assigned concerning the need to contact the EEO office within 45 days of any alleged discrimination. This clear record, including plaintiff's name on a sign-in sheet for an EEO training session conducted on April 20, 2001, easily trumps plaintiff's convenient lack of recollection. Accordingly, defendant's motion should be granted and this case dismissed.[1]

## ARGUMENT

**I.    The 45-Day Period for Plaintiff to Contact an EEO Counselor Expired In August, 2004**

**A.    Plaintiff's Termination Was Final and Effective on July 16, 2004**

Notwithstanding the clear language in the July 16, 2004 termination decision, Plaintiff's Opposition continues to suggest that it was somehow tentative and non-final. See Pl.'s Opp. at 11 (suggesting that the termination letter "was tantamount to a non-final preliminary or initial agency decision to terminate"), 14 (claiming that his termination in July 2004 "was potentially only temporary"); see also Compl. ¶ 4 (characterizing the FBI's July 16, 2004 termination decision as "tentative"). Yet, Plaintiff's Opposition fails to rebut and the Complaint confirms

---

[1] Because Plaintiff's Opposition and Defendant's Reply rely on declarations and other matters outside of the pleadings, the Court may consider Defendant's motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. See Yates v. District of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003).

that the FBI terminated Plaintiff's employment on July 16, 2004, and his salary had ceased even before that. See Compl. ¶¶ 9, 12 (the "OPR [Office of Professional Responsibility] Decision also advised Plaintiff Foster that the OPR was dismissing him from the FBI, effective upon his receipt of the decisional letter, July 16, 2004…"). Importantly, plaintiff concedes that "the July 7, 2004 letter from the FBI **emphasizes** that the discipline imposed is not postponed during the pendency of the appeal." Pl.'s Opp. at 14 (emphasis added); Compl. ¶ 13. The Court is bound to accept only plaintiff's well-pleaded facts (i.e., that the discipline was final and he was not being paid after July 16, 2004), and may reject his self-serving characterization of his termination as less than final.[2]

No less authority than the Supreme Court has rejected plaintiff's argument that notifying plaintiff that his employment was terminated and stopping his pay and benefits was less than final. In Electrical Workers v. Robbins & Myers, Inc., 429 U.S. 229 (1976), the Supreme Court explained that the relevant action for purposes of filing an EEO charge occurred on the date the employee "stopped work and ceased receiving pay and benefits." Id. at 234-35. This Court squarely addressed the same point in Raines v. U.S. Dep't of Justice, 424 F.Supp.2d 60 (D.D.C. 2006), where it rejected another Special Agent's attempt to circumvent the 45-day deadline for filing an EEO complaint by challenging the FBI's refusal to reinstate him instead of its decision to terminate his employment. Id. at 65-66. The request for reinstatement in Raines is akin to the internal appeal pursued by Plaintiff in this case because Plaintiff also effectively sought

---

[2] Taiwo Okusami v. Psychiatric Institute of Washington, Inc., 959 F.2d 1062, 1069 (D.C. Cir. 1992) (Sentelle, J., concurring in part and dissenting in part), quoting 5A Wright & Miller, *Federal Practice and Procedure*, § 1357, at 315; see also Henthorn v. Department of Navy, 29 F.3d 682, 684 (D.C. Cir. 1994) (even for pro se plaintiff, "the district court 'need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations,'"), quoting Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

3

reinstatement. Thus, Raines, which is cited on page five of Defendant's opening memorandum, is practically on all fours with this case, yet nowhere does Plaintiff's Opposition even mention it, let alone attempt to distinguish it. As in Raines, the Court should conclude that the 45-day clock began running on the date of termination, not after a subsequent determination that failed to reverse the termination. Because plaintiff was neither performing work for the FBI nor entitled to any pay during the voluntary, internal appeal process, his characterization of the FBI's July, 2004 termination of his employment as "tentative" or "non-final" is simply inaccurate. Indeed, his internal appeal makes his termination no less final than bringing this action. Here, as in his internal appeal, if he prevails, he can obtain reinstatement. But neither render the termination anything itself less than final.

### B. An Internal Appeal Did Not Toll the 45-Day Period

There can be no dispute that the 45th day after July 16, 2004 – the date plaintiff's employment by the FBI ended -- fell at the end of August, 2004. There is also no dispute that plaintiff waited until well into 2005 to first contact the FBI's EEO office. Pl.'s Opp. at 3 ("On August 18, 2005, Plaintiff Foster contacted the FBI's EEO office to complain about the role of discrimination in the FBI's dismissal. . ."). In the meantime, Plaintiff pursued an internal appeal at the FBI separate and apart from the EEO office and never mentioned discrimination as a possible ground for reversing the FBI's termination of his employment.

Although Plaintiff's Opposition cannot dispute that defendant's motion cited cases that have held that an internal or collateral appeal does not extend the 45-day period to contact an EEO counselor, he contends that all such authorities should be disregarded. First, plaintiff erroneously argues that the law on which Defendant relied is not binding. See Pl.'s Opp. at 14 (suggesting that defendant's motion only cited decisions of "other district courts in other circuits,

4

primarily the Seventh Circuit"). Indeed, defendant cited U.S. Supreme Court authorities, Delaware State College v. Ricks, 449 U.S. 250, 261 (1980) and Robbins & Myers, Inc., 429 U.S. at 234, and those are certainly binding. Defendant also pointed to other federal appellate decisions as well as district court cases within the Fifth, Seventh, and Ninth Circuits. See Def.'s Mem. at 8-10. Although the authorities most directly on point are from courts outside of the D.C. Circuit, Plaintiff conveniently ignores Raines, which is a decision of this Court, and fails to explain why the holding and rationale of the multiple, cited authorities should not apply in this case.

Plaintiff also contends incorrectly that the cases cited by Defendant all relate to "a contractual (collective bargaining agreement-based) grievance process involving a third-party arbitrator." Pl.'s Opp. at 14. Indeed, the following cases cited in defendant's motion, involved internal appeals, as opposed to grievances, of employment decisions: Ricks, 449 U.S. at 252 (appeal to internal educational policy committee); Soignier v. American Board of Plastic Surgery, 92 F.3d 547, 553 (7th Cir. 1996) ("His internal appeal was only an added forum – an opportunity to get two bites at the apple."), cert. denied, 519 U.S. 1093 (1997); Lever v. Northwestern University, 979 F.2d 552, 556 (7th Cir. 1992) (appeals to internal panel), cert. denied, 508 U.S. 951 (1993); Rivera v. England, 360 F. Supp. 2d 1104, 1113 (D. Haw. 2005) (stating that an internal appeal to the decision-maker would not have extended the 45-day period).[3] In each of

---

[3] See also Kovacevich v. Kent State University, 224 F.3d 806, 829 (6th Cir. 2000) (stating that Sixth Circuit precedent has held that denial of an internal grievance or "denial of a request for relief from discrimination does not itself constitute a discriminatory act that tolls the statute of limitations" for filing a charge); Thomas v. Eastman Kodak Co., 183 F.3d 38, 52 (1st Cir. 1999) ("Furthermore, the statute of limitations for a Title VII claim is not tolled while an employee exhausts any internal remedy the employer has made available."), cert. denied, 528 U.S. 1161 (2000); Holmes v. Texas A&M University, 145 F.3d 681, 684-85 (5th Cir. 1998) (finding that the pendency of an internal appeal of a termination decision did not toll the limitations period).

5

these cases, employees were prevented from asserting untimely discrimination claims because the internal appeal did not toll the applicable deadline for raising such claims.

Moreover, plaintiff fails to identify any relevant distinctions between cases involving appeals to a third-party arbitrator and internal appeals. The question here is the time the employment decision became effective. The Supreme Court in Ricks concluded that "the only alleged discrimination occurred – and the filing periods therefore commenced – at the time the [] decision was made and communicated to [plaintiff]," and not at the conclusion of any appeal of the employment decision. Ricks, 449 U.S. at 261 (stating that consideration of an appeal "does not suggest that the earlier decision was in any respect tentative"). Similarly, in Smith v. Potter, 445 F.3d 1000, 1007 & n.19 (7th Cir. 2006), the court explained that regardless of the method of review of a termination decision, the 45-day time period begins running when the employer provided clear notice that the termination was implemented.

In an attempt to turn back the tide of these decisions, Plaintiff relies on a single case, Pinkney v. District of Columbia, 439 F. Supp. 519 (D.D.C. 1977), which he suggests provides "relevant guidance." Pl.'s Opp. at 15. To the extent that it does, it favors defendant. Importantly, unlike the cases cited by the Defendant, Pinkney does not involve the regulation at issue in this case, 29 C.F.R. § 1614.105(a)(1), does not address the equitable estoppel doctrine upon which plaintiff seeks to rely, and is not a discrimination case addressing the procedural requirements for filing an EEO claim. Beyond these contextual distinctions, key factual differences render the rationale of Pinkney inapplicable. The plaintiff in Pinkney was a D.C. employee who had been indicted on conspiracy charges and was terminated. See Pinkney, 439 F. Supp. at 523-24. A D.C. statute required that a claimant seeking to recover damages against the District of Columbia provide written notice to the Mayor within six months of the alleged injury.

6

See id. at 524.  Although the plaintiff in Pinkney did not comply with the six-month notice requirement, the court allowed the claim to proceed for two reasons:  (1) Pinkney had placed the District of Columbia on notice of his claim by sending a letter "the very next day" after his termination to the Office of the Corporation Counsel, which was the office designated to receive the written notice under the relevant statute, id. at 526; and (2) the plaintiff told the employer he was unwilling to answer questions about the indictment, which was the basis for his termination, because he did not want to compromise his Fifth Amendment right against self-incrimination.  See id. at 523.  The court found that the plaintiff's delay was "quite understandable given the pending criminal charges."  Id. at 526.

     Here, in contrast to Pinkney, Plaintiff in this case waited until August 2005 - over one year after his position was terminated in July 2004 – before first raising the claim he now wishes to pursue.  Plaintiff never raised an assertion of race and national origin discrimination at any of the following times:  (1) within 45 days of the OPR decision to terminate his employment in July 2004 and (2) during the entire appeal process from July 2004 until the decision on August 5, 2005 by the Disciplinary Review Board ("DRB").  Unlike the plaintiff in Pinkney, the Plaintiff did not place his employer on notice of his discrimination claim until well after the applicable time for raising it had long since passed.   But plaintiff's comparison to Pinkney fails for another critical reason:  the record contradicts it.  Until plaintiff's opposition to defendant's motion, there has never been any suggestion that plaintiff had any concern about his right against self-incrimination under the Fifth Amendment.  There were no pending criminal charges and plaintiff made statements to support his appeal to the DRB.  He utterly fails to explain how the Fifth Amendment prohibited him from talking to the EEO side of the FBI but had no such effect on his ability to appeal to the DRB.  Even so, the Court should disregard this belated Fifth Amendment

7

argument because the reasons plaintiff gave in his affidavit fail to support it.  Plaintiff's affidavit never even mentions the Fifth Amendment, and nothing in it suggests that he delayed contacting the FBI's EEO office because he was concerned about the possibility of incriminating himself in a possible criminal charge.  In fact, the exclusive reason plaintiff gives for delaying making initial EEO contact is his own purported ignorance, and the absence of any other reason that prevented plaintiff from expressing his belief to an EEO counselor that his July 2004 termination was unlawfully discriminatory sharply undercuts any belated assertion of a Fifth Amendment concern.

     Importantly, nothing prevented plaintiff from asserting his discrimination claim at the same time he pursued his internal appeal.  Plaintiff failed to raise the discrimination issue to the DRB and limited his arguments to disputing the seven substantive findings of performance-related misconduct.  Compl. ¶¶ 7, 14-15.  It was only after the DRB rejected his arguments more than a year after the OPR's decision in July 2004 that Plaintiff decided to raise an alternative argument that the decision was based on race and national origin discrimination.  Compl. ¶ 23.  Plaintiff's Opposition contains no argument or evidence to suggest that the DRB appeal procedure the FBI afforded Plaintiff precluded him from also asserting his discrimination claim to the EEO counselor.  Plaintiff also has not cited anything to suggest that an appeal to the DRB was a prerequisite to filing any EEO claim.  See Holmes, 145 F.3d at 685 ("Thus, [plaintiff] deserves no equitable tolling for the pendency of his university grievance procedures, a remedy which he need not have pursued.").

     Plaintiff's Opposition proceeds to suggest that the Court adopt a policy in which the "exhaustion doctrine should apply to underlying agency conduct before pursuing [a] Title VII

claim." Pl's Opp. at 17.[4]  In other words, Plaintiff would have the Court adopt a rule that allows employees to first appeal the substantive grounds of their termination, wait and see if the decision is unfavorable, and only then assert a claim of discrimination under Title VII.  See Pl.'s Opp. at 17.  That argument misses the point and contradicts the existing law.  The issue here is whether Plaintiff timely raised his **discrimination** claims to the Agency within 45 days of the termination.  If the Court were to accept plaintiff's position, then it would create separate procedural requirements for employees who limit their appeal of an employment decision to the underlying merits of the decision without raising a discrimination claim.  The regulation that sets forth the 45-day time period, 29 C.F.R. § 1614.105(a)(1), simply does not provide different time requirements for those employees who only seek to raise a discrimination claim after all other arguments have failed.  The court in Lever v. Northwestern University, 979 F.2d 552, 556 (7th Cir. 1992), sagely noted that if it allowed the time to start running from the date of the denial of an internal appeal, then employees could nullify the applicable time limits by filing a series of appeals.  See Def's Mem. at 8.  In Holmes v. Texas A&M University, 145 F.3d 681, 684 (5th Cir. 1998), the plaintiff made a similar argument that the time for filing a discrimination charge should have been tolled until his internal request for reconsideration of the termination decision was decided.  The court rejected the argument and explained that the plaintiff was not required to exhaust his internal remedies before asserting his discrimination claim.  See id. at 684-85.

---

[4]  Plaintiff's Opposition also states that had "he chosen to go directly to court to challenge on its merits (not on EEO grounds) the decision to dismiss as improvidently issued, Defendant would have argued for dismissal of his complaint on the grounds he had failed to exhaust his administrative remedies."  Pl.'s Opp. at 16.  This argument is irrelevant because plaintiff is not challenging the basis of FBI's termination decision on any grounds other than discrimination in this action.

In short, Plaintiff's claim is barred because the OPR termination decision in July 2004 triggered the start of the 45-day period to contact an EEO counselor, and Plaintiff failed to satisfy the requirement.

## II.     The FBI Provided Ample Notice of the 45-Day Requirement for Filing EEO Complaints

### A.     Plaintiff Bears the Burden of Pleading and Proving Grounds For Equitable Tolling

Plaintiff bears the burden of pleading and proving equitable reasons for failure to comply with the requirement that he make an EEO complaint within 45 days. Bayer v. U.S. Dep't of Treasury, 956 F.2d 330, 333 (D.C. Cir. 1992); Smith v. Dalton, 971 F. Supp. 1, 3 (D.D.C. 1997).[5]  The power to equitably toll a statute of limitation, however, is "exercised only in extraordinary and carefully circumscribed instances."  Smith-Haynie v. District of Columbia, 155 F.3d 575, 580 (D.C. Cir. 1998) (internal quotations and citation omitted).  This is not one of those cases.

In Baldwin County Welcome Center v. Brown, 466 U.S. 147 (1984) (per curiam), the Supreme Court stated that one circumstance where equitable tolling would be proper is in "a case in which a claimant has received inadequate notice" of his responsibilities.  Id. at 151; see Bowden, 106 F.3d at 438 ("courts have excused parties, particularly those acting pro se, who . . . were misled about the running of a limitations period, . . . by inaccurate or ineffective notice

---

[5] Plaintiff cites Silver v. Leavitt, No. Civ. A. 05-0968 JDB, 2006 WL 626928, at *8 (D.D.C. Mar. 13, 2006) (Bates, J.), for the proposition that Defendant bears the burden of proof on the issue of whether equitable tolling applies. See Pl'.s Opp. at 7-8.  Plaintiff is incorrect.  This Court in Silver merely stated that it is the defendant's burden to show that the plaintiff did not timely contact an EEO counselor.  See Silver, 2006 WL 626928, at *8.  Here, the Defendant has met that burden by showing that the Plaintiff's termination occurred in July 2004 and Plaintiff waited over a year before contacting a counselor.  The Court in Silver stated that, "**It is the plaintiff's burden, not defendant's**, to supply the basis upon which the Court may find that equitable tolling of the deadline is justified."  Id. at *9 (emphasis added).

10

from a government agency required to provide notice of the limitations period," or "when complainants neither knew nor had reason to know about the limit") (citations omitted).  This is not the case here.

>    B.    **Tolling Is Unwarranted Where the Employer Shows Reasonable Efforts To Inform Its Employees of the 45-Day Deadline**

Curiously, plaintiff cites this Court's decision in Harris v. Attorney General of the United States, 400 F. Supp. 2d 24 (D.D.C. 2005) (Bates, J.), Pl.'s Opp. at 5, in which the plaintiff claimed that the 45-day time limit should be extended because she had no knowledge of the requirement, and the Court rejected her argument and dismissed her Title VII claim.  See Harris, 400 F. Supp. 2d at 25.  The Court in Harris reiterated that the plaintiff "bears the burden of pleading and proving equitable reasons for noncompliance."  Id. at 27 (citing Bayer v. U.S. Dep't of Treasury, 956 F.2d 330, 332 (D.C. Cir. 1992)); see also Jarmon v. Powell, 208 F. Supp. 2d 21, 26 (D.D.C. 2002) (Bates, J.) (finding that plaintiff had not met his burden to establish equitable tolling).  Then, the Harris Court rejected plaintiff's claim for tolling and noted that the D.C. Circuit has "consistently held that equitable tolling should only be granted in 'extraordinary and carefully circumscribed circumstances.'"  Harris, 400 F. Supp. 2d at 27 (citing Washington v. Washington Metropolitan Area Transit Authority, 160 F.3d 750, 753 (D.C. Cir. 1998), cert. denied, 527 U.S. 1038 (1999); Smith-Haynie v. District of Columbia, 155 F.3d 575, 579-80 (D.C. Cir. 1998)); see also Jarmon, 208 F. Supp. 2d at 26.  According to Harris, the test is whether the notice provided was "reasonably geared" to inform the complainant of the relevant time limit.  Harris, 400 F. Supp. 2d at 27 (internal citations omitted); see also Aceto v. England, 328 F. Supp. 2d 1, 6 (D.D.C. 2004) (stating that the test is not whether an employee was subjectively aware of the time limit, but rather "whether information is available that is reasonably geared to inform the complainant of the relevant time limit").  Likewise, the Court in O'Neal v. England, No. Civ.

11

A. 02-0172 (RWR), 2003 WL 21788956, at *2 (D.D.C. July 17, 2003), aff'd on other grounds, No. 03-5261, 2004 WL 758965 (D.C. Cir. Apr. 7, 2004), observed that "[I]f the information is available to the employee, he will not be heard to claim unawareness as an excuse for missing the deadline." In this case, as shown in the following section, Plaintiff had ample reason to know of the EEO deadlines.

> **C.    Plaintiff's Sworn Ignorance and Lack of Recollection of EEO Training and Posted Notices Contradicts the FBI's Evidence So Plaintiff Cannot Establish Valid Grounds for Tolling**

In a declaration submitted with his opposition, Plaintiff asserts that during his nearly eight-year tenure as a Special Agent at the FBI from 1996 until 2004, he "had no formal or even informal training in the EEO process, much less the 45-day limit" and was "not notified of the 45-day deadline for contacting the EEO counselor or otherwise aware of it." Pl.'s Aff. ¶¶ 4, 9. Plaintiff, who was terminated for, inter alia, lying under oath (see Compl. ¶¶ 7, 17), also represents that:

> I did not see, to the best of my recollection, any posted information, handbooks, or videos describing the EEO process and specifically not the 45-day time limit for bringing complaints to the attention of EEO officers in my agency.

Pl.'s Aff. ¶ 5.

Although 29 C.F.R. § 1614.105(a)(2) states that the 45-day time limit may be extended if the plaintiff shows that (1) his employer did not notify him of the time limit, **and** (2) he was not otherwise aware of the time limit, there is no basis for extending the 45-day limit here because the FBI notified Plaintiff repeatedly, indeed annually, of the 45-day time limit to contact an EEO counselor and posted accurate information in common areas in its offices to remind employees of the deadline and procedures. Plaintiff worked in the FBI's Chicago office from 1996 to mid-1998, the San Juan office from mid-1998 through the summer of 2001, and the Miami office

12

from the summer of 2001 until his termination in July 2004.  See Pl.'s Aff. ¶ 6.  In each office, the FBI posted notices in common areas informing employees specifically of the 45-day time limit.  Specifically, the poster setting forth employees' EEO rights states:

> Before a formal complaint of discrimination may be filed, you must bring the matter to the attention of one of the below-named persons [EEO counselor] within 45 calendar days after the action in question.  Failure to contact an EEO counselor **WITHIN 45 CALENDAR DAYS** of an alleged discriminatory action will likely result in forfeiture of your right to pursue a claim of discrimination.

See Declaration of Anthony J. Harper ("Harper Dec."), ¶ 4 (attached as Exhibit 1; emphasis in original); Declaration of Aurea Iris Garcia ("Garcia Dec."), ¶¶ 4-5 (attached as Exhibit 2); Declaration of Alicia A. Lancaster ("Lancaster Dec.") (attached as Exhibit 3), ¶¶ 4-5.  Accordingly, the poster accurately states the time requirement set forth in 29 C.F.R. § 1614.105(a)(1).  See Aceto v. England, 328 F.Supp.2d 1, 6 (D.D.C. 2004).  During the time Plaintiff worked in Chicago, the FBI had a poster on the eighth, ninth, and tenth floors of the building.  See Harper Dec. ¶ 4.  The areas in which the posters were located were accessible to all employees in the Chicago Division.  See id.  The FBI office in San Juan had the same poster in a common area on the fifth floor, which is one of the floors on which Plaintiff specifically claims to have worked, from mid-1998 through the summer of 2001.  Compare Garcia Dec. ¶ 4 with Pl.'s Aff. ¶ 6.  The Miami office had two posters in areas accessible to all employees on the second floor, which is also one of the floors on which Plaintiff claims he worked during the summer of 2001 through July 2004.  Compare Alexander Dec. ¶ 4 with Pl's Aff. ¶ 6.  In addition, a memorandum dated September 15, 2003, from the Miami Division reflects that, "Miami continues to display posters throughout the division and Resident Agencies depicting each Counselor's Name, photograph and telephone listing.  In addition to this poster depicting

important EEO dates and bases of discrimination are also poster[s] throughout the division." Alexander Dec. ¶¶ 6-8.

The FBI provides annual training to its employees concerning their rights and responsibilities under its EEO program. See Declaration of Veronica Venture ("Venture Dec."), ¶ 4 (attached as Exhibit 4). This training includes specific discussion of the 45-day deadline for making contact with the EEO counselors. See id. Among other things, the FBI includes a presentation to its New Agents during their initial training at Quantico about the EEO process. See id. ¶ 5.

Plaintiff attended New Agent Training in 1996, and the FBI's records reflect that plaintiff's particular class was given a lecture and a handout on the EEO process on April 1, 1996. See Declaration of Marian E. Coleman ("Coleman Dec."), ¶¶ 4-5 (attached as Exhibit 5). The lecture and the handout included information on the 45-day deadline. Id. Plaintiff placed his initials on a list as an attendee at the lecture and to recognize his receipt of the written material. Id. ¶ 5 & attachment. Thus, contrary to Plaintiff's sworn denial, he did in fact receive EEO training at the outset of his time with the FBI. Moreover, plaintiff also attended training later in his career in which the FBI discussed the 45-day time requirement. For example, on April 20, 2001, Plaintiff's handwritten name appears on the attendance sheet for the "Annual Agents Conference" in San Juan that included specifically a discussion of the Agency's EEO procedures. See Garcia Dec. at ¶ 6 & attachment. The FBI also provided annual EEO training in Miami in which the EEO counselor also informed agents of the 45-day period to contact a counselor. See Lancaster Dec. ¶ 8. Accordingly, from Plaintiff's earliest days with the FBI and throughout his employment wherever he worked, he was informed of the 45-day requirement for

preserving EEO claims both orally and in writing, and the FBI posted the same information in common areas.

As a result, Plaintiff is not entitled to excuse his professed residual ignorance of the deadline through tolling because his self-serving assertions are insufficient to meet his burden. See Harris, 400 F. Supp. 2d at 28; Aceto, 328 F. Supp. 2d at 6; O'Neal, 2003 WL 21788956, at *2. This Court and others have soundly rejected similar claims from other plaintiffs who asserted that they were subjectively unaware of the 45-day time limit notwithstanding their employers' efforts to educate and make information available. In O'Neal v. England, No. 02-172 (RWR), 2003 WL 21788956 (D.D.C. July 17, 2003), at *2, the Court denied tolling where the employer submitted evidence that the plaintiff attended a single employment training session that included information on the 45-day limit to raise a discrimination claim to a counselor. See id. In Harris, the court found that the employer's declarations established that informational posters, which accurately described the 45-day time limit, were placed in common areas accessible to the plaintiff. See Harris, 400 F. Supp. 2d at 28. "Therefore, relevant information reasonably geared to inform plaintiff of the regulation was made available to her." Id. In Aceto, the court held that equitable tolling did not apply because the defendant presented evidence of posters displayed on the bulletin boards that stated on their face the 45-day time requirement and that plaintiff attended a training session in which the employer explained the EEO process and time limit for asserting a claim. See Aceto, 328 F.Supp.2d at 6.[6]

---

[6] In Van Atta v. Department of Veteran Affairs, EEOC Appeal No. 01A11690, 2001 WL 1202137, at *1 (EEOC Apr. 5, 2001), the EEOC found that the employer established constructive notice of the time limit because the employer submitted a statement confirming the existence of the EEO posters in accessible common areas, the posters contained the relevant information on the 45-day time limitation, and the agency provided EEO training during employee orientation and periodic training sessions.

Like the plaintiff in Harris, Plaintiff has not denied either access to the Agency's common areas, or the existence of the posters.  See Harris, 400 F. Supp. 2d at 28.  Plaintiff's affidavit merely states that he "did not see, to the best of my recollection" and at "none of these office locations did I see at any time any EEO information, at least none visible to me."  Pl.'s Aff. ¶¶ 5-6.  Taken together and applying this law, the FBI's evidence here of regular training and availability of information in common areas is more than enough to warrant denying Plaintiff the benefit of an extension of the 45-day deadline for filing an EEO complaint under an equitable tolling theory.

Because Plaintiff fails to demonstrate a sufficient basis for excusing the long delay between the FBI's termination of his employment and his first contact with the EEO office, plaintiff's claims must be dismissed.  Battle v. Rubin, 121 F. Supp. 2d 4, 7 (D.D.C. 2000) ("a party must timely file all applicable administrative complaints and appeals in order to bring a claim in federal court").

**CONCLUSION**

For the reasons stated above and in Defendant's Motion to Dismiss, the Defendant respectfully requests that the Court grant its motion and dismiss this case in its entirety.

Dated:  January 9, 2007

                                      Respectfully submitted,

                                      _____
                                      JEFFREY A. TAYLOR, D.C. Bar # 498610
                                      United States Attorney

                                      /s/_____
                                      RUDULPH CONTRERAS, D.C. Bar #434122
                                      Assistant United States Attorney

                                      /s/_____
                                      JANE M. LYONS, D.C. Bar # 451737
                                      Assistant United States Attorney
                                      Civil Division
                                      555 4th Street, N.W., Room E-4822
                                      Washington, D.C.  20530
                                      (202) 514-7161