**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DAVID FOSTER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ALBERTO GONZALES, Attorney General of the United States,**<br><br>**Defendant.** | **Civil Action No. 06-1288 (JDB)** |

**MEMORANDUM OPINION**

Plaintiff David Foster ("Foster") brings this employment-discrimination action against Alberto Gonzales, Attorney General of the United States, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (2000). Foster alleges that the Federal Bureau of Investigation ("FBI") intentionally and wrongfully terminated him on the basis of his Hispanic race and Peruvian national origin. See id. § 2000e-2. The government has filed a motion to dismiss the action for failure to state a claim, which the Court will treat as a motion for summary judgment. For the reasons stated below, the Court concludes that Foster failed to exhaust his administrative remedies and therefore grants summary judgment for defendant.

**BACKGROUND**

The parties do not disagree over the following facts. Foster was employed by the FBI as a Special Agent beginning in March 1996. Compl. ¶ 4. In 2001, the FBI notified Foster that it was investigating nine allegations of professional misconduct that allegedly occurred while Foster was on assignment with the FBI's San Juan, Puerto Rico Division. Id. ¶ 7. At the conclusion of

the investigation, the FBI's Office of Professional Responsibility ("OPR") notified Foster in March 2004 that it had substantiated seven of the charges and therefore was proposing his termination. Id. ¶ 9. Foster, acting through counsel, submitted a written response to the proposal on June 3, 2004, and made an oral presentation to the OPR on June 29, 2004. Id. ¶¶ 10-11. On July 16, 2004, Foster received a letter from the acting assistant director ("AD") of the OPR, dated July 7, 2004, informing Foster that the acting AD had considered his written response and oral presentation and ultimately found that the seven allegations were indeed supported by a preponderance of the evidence. Id. ¶ 12. The letter then stated: "Therefore, I am dismissing you from the rolls of the FBI for the efficiency of the service, effective upon your receipt of this letter." Aff. of Pl., Daniel Foster ("Foster Aff."), Ex. 1 ("July 2004 termination letter") at 1. The letter also identified Foster's internal appeal rights:

> Should you desire to appeal this action, you may address your written response stating the grounds on which you base your appeal to the Assistant Director (AD), Administrative Services Division (ASD), Room 6012, U.S. Department of Justice, Federal Bureau of Investigation, J. Edgar Hoover Building, 935 Pennsylvania Avenue, Northwest, Washington, D.C. 20535-0001. Any appeal must be filed within ten calendar days following notification of the disciplinary action. The discipline imposed by this letter is **not** postponed pending your appeal.
>
> . . . Upon receipt of an appeal of a suspension more than fourteen calendar days, dismissal, or demotion, the AD, ASD, will establish a Disciplinary Review Board (DRB) to review the action taken by the OPR. In exercising appellate authority, ASD and a DRB may independently redetermine the factual findings and/or the penalty imposed . . . .

July 2004 termination letter at 16; see also Compl. ¶¶ 12, 13.

Foster appealed his July 16, 2004, termination by way of a twelve-page letter to the

Administrative Services Division ("ASD") of the FBI, submitted pro se on July 24, 2004. Compl. ¶ 14. The ASD denied Foster's appeal in a letter that was dated August 5, 2005, and received by Foster on August 13, 2005. Id. ¶ 16. After learning of this decision, and on the advice of his newly-acquired counsel, Foster contacted the FBI's Equal Employment Opportunity ("EEO") officer in Miami[1] on August 18, 2005, "to complain about the role of discrimination in the FBI's action dismissing him from . . . service." Compl. ¶ 23; see also Foster Aff. ¶ 3. Foster separately filed a formal Petition for Reconsideration and to Reopen for the Receipt of New Evidence ("Petition for Reconsideration") before the ASD on September 12, 2005. Compl. ¶ 19. This Petition for Reconsideration addressed only the merits of the OPR's termination decision, which are distinct from Foster's EEO discrimination claim. See id. ¶¶ 19, 21. The ASD denied Foster's petition on September 23, 2005. Id. ¶ 22. Foster next filed his formal EEO complaint for employment discrimination with the FBI on October 5, 2005. Id. ¶ 24. Although the FBI acknowledged receipt of Foster's complaint and initiated an investigation into its allegations, the investigation had not been completed, nor had there been resolution of Foster's EEO complaint, at the time this action was filed on July 20, 2006.[2] Id.

**STANDARD OF REVIEW**

The government has filed a motion to dismiss for failure to state a claim and relies on declarations, as does plaintiff. When, on a Rule 12(b)(6) motion, "matters outside the pleading

---

[1]Foster began his career with the FBI stationed in two offices in the Chicago area. In 1998, Foster was transferred to the San Juan, Puerto Rico office. Finally, in 2001, Foster was transferred to Miami, where he worked until his termination in 2004. Foster Aff. ¶ 6.

[2]Apparently, on December 11, 2006, Foster did receive a two-volume investigative report from the FBI's EEO Office regarding his discrimination complaint. The determination made in this report is unclear from the record. See Pl.'s Surreply at 2.

are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b); see Yates v. District of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003).  Here, the Court has considered declarations outside of the pleadings and thus treats the motion as one for summary judgment.  Both parties were given a reasonable opportunity to submit materials outside the pleadings, as evidenced by the submission of declarations from both sides.  Further, an opportunity was afforded to each party to respond to the other's submissions.  Therefore, a conversion of defendant's Rule 12(b)(6) motion to one for summary judgment is appropriate.

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Fed. R. Civ. P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the

"mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

**ANALYSIS**

The government has moved to dismiss this action, contending that Foster failed to exhaust his mandatory administrative remedies. Specifically, defendant asserts that Foster failed to contact an EEO counselor within 45 days of the effective date of the allegedly discriminatory personnel action, as required by applicable federal regulations. See 29 C.F.R. § 1614.105(a)(1) (2006). Foster makes two arguments in response. First, he asserts that the OPR's termination decision of July 2004 was tentative, and thus he did not need to contact an EEO counselor until August 2005, when his termination became "final" upon the FBI's denial of his internal appeal. Second, Foster argues that even if he did not timely contact an EEO counselor, equitable tolling applies because he was neither notified of nor otherwise aware of the 45-day deadline.

A federal employee alleging discrimination in violation of Title VII is required to contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." § 1614.105(a)(1). The relevant agency or the Equal Employment Opportunity Commission ("EEOC") must grant an extension of this 45-day time limit "when the individual shows that he or she was not notified of

the time limits and was not otherwise aware of them." § 1614.105(a)(2)[3]; see Harris v. Gonzales, No. 05-5494, 2007 WL 1515126, at *2 (D.C. Cir. May 25, 2007). Failure to exhaust administrative remedies, including the failure to timely contact an EEO counselor, will ordinarily bar a plaintiff from pursuing a judicial remedy. Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985); see also Jarmon v. Powell, 208 F. Supp. 2d 21, 23 (D.D.C. 2002). The 45-day deadline for initiating EEO counseling is, however, subject to equitable tolling. See Harris, 2007 WL 1515126, at *2; see also Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (holding EEO filing deadline is subject to equitable tolling); Currier v. Radio Free Europe/Radio Liberty, Inc., 159 F.3d 1363, 1367 (D.C. Cir. 1998) (same). The initial burden of establishing a plaintiff's failure to exhaust administrative remedies rests with the defendant, see Brown, 777 F.2d at 12-13; the plaintiff, however, has the burden of demonstrating that equitable tolling is warranted, Bayer v. U.S. Dep't of Treasury, 956 F.2d 330, 333 (D.C. Cir. 1992).

**I. Exhaustion of Administrative Remedies**

As noted above, Foster was required to contact an EEO counselor within 45 days of the effective date of the allegedly discriminatory personnel action -- here, his dismissal from the FBI. See § 1614.105(a)(1). The July 2004 termination letter explicitly stated that Foster was

---

[3]An extension of the 45-day time limit is available to an individual who meets one of the four criteria listed in § 1614.105(a)(2), which reads in full:

> The agency or the Commission shall extend this 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been [sic] known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

dismissed "from the rolls of the FBI for the efficiency of the service, effective upon [his] receipt of this letter." July 2004 termination letter at 1. Foster received this letter, and thus his termination was effective, on July 16, 2004. Compl. ¶ 12. Foster neither requested nor received an extension of the deadline for contacting an EEO counselor from the FBI or the EEOC. Thus, the pertinent date triggering the 45-day limitations period is July 16, 2004, and Foster's first contact with the EEO counselor on August 18, 2005, over one year later, was untimely.

Foster actually concedes that "[his] termination became effective upon receipt of the letter of July 7, 2004." Pl.'s Opp'n at 14; see also Compl. ¶ 12 ("The OPR Decision advised Plaintiff Foster that the OPR was dismissing him from the FBI, effective upon his receipt of the decisional letter, July 16, 2004 . . . ."). Despite this concession, Foster suggests that his receipt of the July termination letter is irrelevant because the letter was "tantamount to a non-final" or preliminary agency decision.[4] Pl.'s Opp'n at 11. Foster instead argues that the date of the "controlling discriminatory action" for purposes of the 45-day period is August 13, 2005, when his internal appeal was denied. Id. But this argument ignores the plain language of the regulation, which requires a claimant to initiate contact with an EEO counselor, "in the case of personnel action, within 45 days of the effective date of the action." § 1614.105(a)(1) (emphasis added). The regulation's explicit reference to the effective date of the allegedly discriminatory personnel

---

[4]Foster relies on the following description of the FBI appeals process, taken from the July 2004 termination letter, to argue that the acting AD's July 2004 decision was only tentative: "In exercising appellate authority, ASD and a DRB [Disciplinary Review Board] may independently redetermine the factual findings and/or the penalty imposed." July 2004 termination letter at 16. Foster also quotes from § 13-1(5)(f) of the FBI Manual of Administrative Operations and Procedures, which states that "the decision of . . . a DRB concerning the merits of an appeal . . . will constitute the final decision of the FBI concerning the appropriateness of the disciplinary sanction in the matter under appeal." Pl.'s Surreply Ex. 2 at 3.

action makes it altogether unnecessary to determine whether and when plaintiff had notice of what he calls a "final" termination decision.[5] Nor is the denial of an appeal a "fresh act of discrimination" that triggers the 45-day deadline anew. Lever v. Northwestern Univ., 979 F.2d 552, 556 (7th Cir. 1992); see also id. ("If it were, then an employee could avoid [administrative deadlines] by filing a series of appeals or fresh requests."). When an adverse personnel action has been taken, the plain language of the regulation identifies the effective date of that action -- here, July 16, 2004 -- as the only relevant date for calculating the 45-day deadline.

To the extent that Foster is arguing that his filing of an internal FBI appeal tolled the 45-day limitations period as a matter of law, the Court is unpersuaded. As a general matter, the Supreme Court has "held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period." Ricks, 449 U.S. at 261; see also Lever, 979 F.2d at 556 ("To treat such opportunities as a source of

[5] The plain language of § 1614.105(a)(1) thus differentiates this action from cases involving the independent statutory deadline for filing an EEO charge "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Courts applying the statutory EEOC filing deadline do start the 180-day period from the date on which the plaintiff had notice of a final (as opposed to a tentative) termination decision. See, e.g., Del. State Coll. v. Ricks, 449 U.S. 250, 261 (1980); Currier, 159 F.3d at 1366-67. Even in the EEO claim-filing context, however, the initiation of an internal appeal or grievance process generally does not affect the finality of a termination decision. See, e.g., Int'l Union of Elec., Radio & Mach. Workers v. Robbins & Myers, Inc., 429 U.S. 229, 234-35 (1976) (finding that alleged unlawful employment practice occurred when plaintiff "stopped work and ceased receiving pay and benefits," not when grievance and arbitration process was complete); Ricks, 449 U.S. at 261 ("[E]ntertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative."); Smith v. Potter, 445 F.3d 1000, 1007 n.19 (7th Cir. 2006) (rejecting plaintiff's argument that conclusion of grievance process, rather than effective date of dismissal, triggered limitations period for filing EEO complaint); see also Currier, 159 F.3d at 1367; cf. Soignier v. Am. Bd. of Plastic Surgery, 92 F.3d 547, 553 (7th Cir. 1996) (noting, in ADA context, that internal appeal "merely confirmed the Board's earlier decisions that sufficient accommodations had already been made for [the plaintiff's] disabilities" and "does not affect the date on which his claim accrued").

equitable estoppel would reverse the [Supreme] Court's conclusion in Ricks and Chardon that appeals and requests for reconsideration do not permit delay."); Alvidrez v. Tisch, 684 F. Supp. 651, 655 (D. Kan. 1988) (holding that filing of internal appeal does not toll period for contacting EEO counselor). This principle is based in part on "the independence of Title VII remedies from other pre-existing remedies available to an aggrieved employee." Int'l Union of Elec., Radio & Mach. Workers v. Robbins & Myers, Inc. ("Elec. Workers"), 429 U.S. 229, 236 (1976). The decision in Electrical Workers, which addressed the impact of a labor union grievance procedure on Title VII claims, illustrates this point. Plaintiff Dortha Guy was terminated for allegedly discriminatory reasons on October 25, 1971, but did not file a discrimination claim with the EEOC until February 10, 1971, after the (then-90 day) deadline for doing so had passed. Id. at 232. Guy argued that the time limit should be equitably tolled during the pendency of her union grievance proceeding, which she filed two days after her termination. Id. The Court rejected this argument, reasoning that "Guy in the grievance proceedings was not asserting the same statutory claim in a different forum, nor giving notice to respondent of that statutory claim, but was asserting an independent claim based on a contract right." Id. at 238; cf. Soignier, 92 F.3d at 553 ("Unlike an EEOC investigation . . ., internal appeals are not part of the ADA statutory procedure and do not toll the time for filing suit."). Thus, the Supreme Court concluded that both the grievance and Title VII remedies should be pursued, and their corresponding deadlines should run, concurrently. See Elec. Workers, 429 U.S. at 236.

   Like Guy's grievance proceeding, Foster's internal appeal of the FBI's termination decision is wholly separate from the Title VII claim he now asserts before this Court. The two remedies "have legally independent origins and are equally available to the aggrieved employee."

Id. Furthermore, Foster's internal appeal raised issues that are entirely distinct from his Title VII claims. In his appeal to the ASD, Foster challenged the OPR's substantiation of seven of the nine misconduct charges levied against him; in particular, Foster offered to take additional polygraph examinations to establish the credibility of his explanations of the underlying events. See Compl. ¶¶ 14, 15. In contrast, Foster's Title VII claim centers on the allegation that his termination was based not on his conduct as a Special Agent or his lack of credibility during the ensuing investigation, but rather on his Hispanic race and Peruvian national origin. See id. ¶ 24. Foster points to the absence of a single Hispanic member of the OPR or the DRB, and the disparity between his termination and the other forms of discipline given non-Hispanic Special Agents found guilty of similar misconduct. Id. ¶¶ 25-27. Given that Foster could have pursued his legally and factually distinct discrimination claims concurrently with his internal appeal, the Court sees no justification for equitably tolling Foster's obligations under Title VII.

Finally, Foster relies on a series of administrative-exhaustion principles in an attempt to justify his decision to complete the internal appeal procedures before initiating the Title VII process. First, he observes that a favorable decision on his internal appeal might have mooted completely the need to pursue a Title VII remedy. See Pl.'s Opp'n at 11-12. True, but for any plaintiff pursuing concurrent remedies, the possibility exists that the successful pursuit of one may moot the need for the other. Presumably, a favorable outcome in the grievance proceedings for the plaintiffs in Ricks or Electrical Workers might have mooted their discrimination claims; the Court nonetheless held that "the pendency of a grievance, or some other method of collateral review of an employment decision" did not toll the limitations period in either case. Ricks, 449 U.S. at 261; Elec. Workers, 429 U.S. at 236-37. Conversely, the Supreme Court confirmed that

Title VII and internal grievance procedures should be undertaken concurrently even though the pursuit of both could lead to conflicting results. See Elec. Workers, 429 U.S. at 239. Furthermore, Foster's argument, taken to its logical conclusion, suggests that a plaintiff could file any number of collateral attacks on the merits of an employment action (whether styled as an appeal, a petition for reconsideration, or something else) and be entitled to an extension of the administrative deadlines for his unrelated discrimination claim. As defendant notes, however, the application of Title VII requirements should not vary depending upon whether a claimant chooses to pursue voluntary internal appeals. Cf. Holmes v. Tex. A&M Univ., 145 F.3d 681, 685 (5th Cir. 1998) (finding that, under Texas statute of limitations applicable to ADA claims, plaintiff "deserves no equitable tolling for the pendency of his university grievance procedures, a remedy which he need not have pursued").

 Next, Foster claims that if he had pursued his Title VII remedies before or concurrently with his internal appeal, he would have been acting counter to the "Supreme Court's admonition in Woodford v. Ngo, [548 U.S. ___, 126 S. Ct. 2378 (2006),] to exhaust administrative remedies." Pl.'s Opp'n at 12. Once again, Foster ignores the fact that his internal appeal raises legal and factual issues that are completely different from his Title VII claims. Regardless of whether Foster pursued his internal appeal, then, the agency would have had "a fair and full opportunity to adjudicate," Woodford, 126 S. Ct. at 2385, his discrimination claims if he had timely pursued the Title VII administrative process.

 Finally, and somewhat inexplicably, Foster surmises that if he had filed a district-court action directly challenging the merits of his termination before the denial of his internal appeal (an action for which he admits there is "no statutory basis"), the government would have filed a

motion to dismiss for failure to exhaust administrative remedies. Pl.'s Opp'n at 16 & n.5. The Court fails to understand the relevance of this observation to the distinct issue raised here -- whether an aggrieved employee must wait until the agency completes its review of his appeal on the merits of the employment action before he can initiate a Title VII claim for discrimination. Furthermore, Foster's citation to Pinkney v. District of Columbia, 439 F. Supp. 519 (D.D.C. 1977), which ostensibly "offers relevant guidance" on this central issue, see Pl.'s Opp'n at 15, is inapposite. Pinkney does not involve Title VII at all, but rather D.C. Code § 12-309, which bars certain suits against the District of Columbia unless the plaintiff "first provides written notice to the Mayor . . . concerning the circumstances surrounding the claim." Pinkney, 439 F. Supp. at 524. If anything, Pinkney stands for the unremarkable proposition that one purpose of the exhaustion of administrative remedies is to provide the government with early notice of "a potentially litigable dispute." Id. at 525. In this case, the Title VII administrative process, including the counseling requirement with which Foster failed to comply, is designed to provide exactly such notice.

In short, the Court finds that Foster was required to contact an EEO counselor within 45 days of his receipt of the termination letter on July 16, 2004, and that his pursuit of an internal FBI appeal on the merits of his termination neither renews nor tolls that 45-day deadline. Accordingly, the Court will now consider whether Foster has raised a genuine dispute of material fact with respect to his remaining equitable-tolling arguments.

## II. Equitable Tolling Based on Lack of Awareness of 45-day Deadline

As the D.C. Circuit has recently clarified, a Title VII claimant is entitled to equitable tolling of the 45-day deadline to contact an EEO counselor once he has made a showing in the

district court that he was not notified of, and was otherwise unaware of, the time limit. Harris, 2007 WL 1515126, at *2. Foster asserts in an affidavit that he was not aware of the 45-day time limit "until shortly after August 13, 2005," when he retained his current counsel, who informed him of the 45-day requirement. Foster Aff. ¶ 3. In support of this statement, Foster explains that he has "had no formal or even informal training in the EEO process, much less the 45-day time limit," id. ¶ 4, that he "was not otherwise exposed to the EEO rules during [his] tenure with the FBI," and that he "did not see, to the best of [his] recollection, any posted information, handbooks, or videos describing the EEO process and specifically not the 45-day limit." Id. ¶ 5. Additionally, Foster notes that the July 2004 termination letter did not include any information regarding the applicable administrative deadlines. Id. ¶ 8.

Even taking Foster's averments to be true, lack of actual notice of the 45-day time limit is not itself sufficient to warrant equitable tolling. See Harris, 2007 WL 1515126, at *2; Johnson v. Runyon, 47 F.3d 911, 918 (7th Cir. 1995) ("[S]ubjective ignorance alone does not automatically entitle [the plaintiff] to the exception in 29 C.F.R. § 1614.105(a)(2)."). The D.C. Circuit has instead adopted the Seventh Circuit's two-step constructive notice inquiry, which considers "(1) whether 'notification of the time requirements was provided,' and (2) whether the notification was 'reasonably geared to inform the complainant of the time limits.'" Harris, 2007 WL 1515126, at *2 (quoting Johnson, 47 F.3d at 918). As the court of appeals explained, "it cannot be that an employee claiming to have been unaware of the 45-day time limit would be automatically entitled to an extension even though the agency, through posters, employee handbooks, orientation sessions, etc., made conscientious efforts to advise its employees of the time limit." Id. Accordingly, courts have found sufficient constructive notice when posters accurately

describing EEO rights and administrative deadlines are posted in an area in which a Title VII plaintiff worked or to which the plaintiff had access during the relevant employment period. See, e.g., Clark v. Runyon, 116 F.3d 275, 277 (7th Cir. 1997); Aceto v. England, 328 F. Supp. 2d 1, 6 (D.D.C. 2004).

The uncontroverted evidence submitted by the government in this case demonstrates that the FBI provided information reasonably geared to inform Foster of the 45-day time limit. The EEO counselor in the San Juan division of the FBI, who has worked in that capacity since 1986, submitted a declaration explaining that an Equal Opportunity poster was posted in a common area on the fifth floor of the federal building in San Juan during the time period 1998 to 2001. Def.'s Reply in Support of Mot. to Dismiss ("Def.'s Reply") Ex. 2 (Decl. of Aurea Iris Garcia ("Garcia Decl.")) ¶¶ 3, 4. The poster, a copy of which is appended to the declaration, is addressed to FBI employees and states in part that "Before a formal complaint of discrimination may be filed, you must bring the matter to the attention of one of the below-named persons within 45 calendar days after the action in question. Failure to contact an EEO counselor **WITHIN 45 CALENDAR DAYS** of an alleged discriminatory action will likely result in forfeiture of your right to pursue a claim of discrimination." Id. ¶ 5, Attach. 1. Foster has stated that he worked on the fourth and fifth floors of the federal building in San Juan from 1998 until the summer of 2001, and also admits that "Special Agents would on occasion gather" in the common areas. Foster Aff. ¶ 6. Although Foster asserts that he did not "see at any time any EEO information, at least none visible to me, posted in my office or in the common areas," id., "testimony to the effect that [a plaintiff] 'did not see' the EEO notices is not by itself sufficient to establish that the notices were not, in fact, posted," Clark, 116 F.3d at 277 n.3.

The government also submitted a declaration from an individual who served as the EEO counselor in the FBI's Miami Division from July 2001 to July 2004. See Def.'s Reply Ex. 3 (Decl. of Alicia A. Lancaster ("Lancaster Decl.")) ¶¶ 1, 3. During that time period, Foster worked on the first and second floors of the FBI building in Miami. Foster Aff. ¶ 6. The Miami EEO counselor states that an EEO poster describing the 45-day deadline was posted in common areas of the FBI building, including on the second floor in the employee's breakroom and on a bulletin board near the second-floor elevator. Lancaster Decl. ¶ 4. A photograph attached to the declaration shows this bulletin board as a whole, on which the EEO poster is prominently displayed and fully visible. Id. ¶ 4, Attach. 2. Another photograph focuses on the poster, which is addressed to FBI employees and clearly states that "Before a formal complaint of discrimination may be filed, you must bring the matter to the attention of one of the below-named persons within 45 calendar days after the action in question. Failure to contact an EEO counselor **WITHIN 45 CALENDAR DAYS** of an alleged discriminatory action will likely result in forfeiture of your right to pursue a claim of discrimination." Id. ¶¶ 4-5, Attach. 1; see also id. ¶¶ 6-7 & Attachs. 3, 4 (internal FBI memoranda describing EEO initiatives during period September 2002 to March 2003 and April 2003 to September 2003, including display of EEO posters). Again, Foster avers only that he "did not see posted [on the first and second floors], certainly not in those areas I frequented, any material, specifically none referencing the 45-day time limit." Foster Aff. ¶ 6 (emphasis added). Foster's statement is not sufficient, however, to create a genuine factual dispute as to whether the posters were actually exhibited in Miami as described in the government's declaration.

Thus, plaintiff has failed to raise a triable issue of fact with respect to whether notification

of the time requirements was provided or whether that notification was reasonably geared to inform him of the time limits. In other words, based on the uncontradicted evidence, no reasonable jury could find that the FBI failed to provide Foster with sufficient constructive notice of the 45-day deadline while he was employed in the San Juan and Miami FBI offices.[6]

**CONCLUSION**

The Court finds, as a matter of law, that Foster failed to exhaust his administrative remedies under Title VII because he failed to initiate contact with an EEO counselor within 45 days of the effective date of his termination. Furthermore, equitable tolling is not available because no reasonable jury could find that Foster had not received constructive notice of the administrative deadline. Accordingly, the Court grants summary judgment to defendant. A

---

[6]The government also submitted an affidavit from the EEO counselor in the FBI's Chicago Division, where Foster was employed from July 1996 to June 1998. See Def.'s Reply Ex. 1 (Decl. of Anthony J. Harper ("Harper Decl.")) ¶¶ 1, 3; Foster Aff. ¶ 6. The Chicago counselor "recall[s]" that posters providing contact information for the EEO counselors were posted on several floors of the building in which the Chicago Division was located, Harper Decl. ¶ 4, presumably referring to the Dearborn building in which Foster worked, see Foster Aff. ¶ 6. Because this affidavit does not state that the poster informed employees of the 45-day deadline, it is insufficient to demonstrate, for purposes of summary judgment, that the posters were "reasonably geared" to notify Foster of the time limit. See Harris, 2007 WL 1515126, at *3.

The government has also submitted a number of affidavits describing the EEO training sessions provided annually to agents in the Chicago, San Juan, and Miami offices -- sessions in which the 45-day deadline is explained to attendees. See Harper Decl. ¶ 5; Garcia Decl. ¶ 6; Lancaster Decl. ¶ 8. It also submitted what appears to be an attendance list from the San Juan Division's 2001 Annual Agents Conference that includes Foster's hand-written name. Garcia Decl. Attach. 2. Additionally, the government presents evidence, including an attendance roster, purporting to show that the FBI notified Foster of the 45-day time limit during his New Agent Training in 1996. Def.'s Reply Ex. 5 (Decl. of Marian E. Coleman) ¶¶ 4-5, Attach. 1. Foster, however, specifically denies having received any formal or informal training, or any other information regarding the EEO process. Foster Aff. ¶¶ 4, 8. Thus, whether Foster learned of the 45-deadline at an FBI training session is a disputed fact that does not provide a basis on which the Court can grant summary judgment.

separate Order accompanies this Memorandum Opinion.

                                                /s/ John D. Bates
                                                JOHN D. BATES
                                      United States District Judge

Dated:  June 28, 2007